Alright, so the first case on the calendar is Pucilowski v. Spotify. And I see we have Mr. Schwartz. You're reserved one minute for rebuttal, and you can begin whenever you're ready. May it please the court. My name is David Schwartz, and I represent the plaintiff appellant Valerie Pucilowski in this matter. The appellant respectfully requests that this court reverse and remand the district court's order dismissing her claims and denying plaintiff leave to amend. At the motion to dismiss stage, the plaintiff sufficiently pleaded her FMLA and New York City Human Rights Law claims. She sufficiently pleaded that there was not a knowing and voluntary signing of the release of claims and waiver. And the district court was not able, should not have been able to find as a matter of law that her execution of the release was knowing and voluntary. Appellant was terminated. Why is that though? Because obviously you anticipated that issue and put in, I think, a lot of allegations with respect to why you believe your client's release was not knowing and voluntary. So why wasn't there a sufficient basis? You incorporated the separation agreement by reference. So obviously the district could look at the terms of the agreement, right? Yes, your honor. So why wasn't there enough there for the Borman factor to be analyzed? Well, your honor, we believe that there was. Given the fraudulent statement made by Spotify, that's what induced my client to sign the agreement. But don't you agree, I think you agreed in your papers that you have to satisfy, even though it's not a separate claim, you have to satisfy 9B with respect to that, right? We have to satisfy 9B. Will 9B, in terms of specificity, even though it's not a separate claim, if you're alleging fraudulent inducement, don't you have to satisfy 9B? Yes, your honor. With regard to the fraudulent inducement part, we would. So why did you do that? You didn't say, she obviously didn't say who the speaker was, just that Spotify induced, fraudulently induced her. So isn't that a problem? Hindsight being what it is, I wish that we would have specified that further. Courts have allowed naming the defendant, the entity, as the speaker. Which court is it? I have a further problem. I'm not sure what was fraudulent in what they told her. You didn't plead what the FMLA affords in terms of days, nor did you assert how many days she had used. So it's not clear to me from the pleadings what they said to her that was fraudulent. Did I miss something? No, your honor. We pleaded what I believe, what appellant believes to be an FMLA claim. We pleaded the 1,250 hours, the requirements for the Family Medical Leave Act. We pleaded that she hadn't... They told her she had no more days left. That's correct, your honor. So wouldn't the pleadings have to tell us how many days she would have had available under the FMLA? How many she used? And if there was a difference, why that made their statement false? Then we get into the other elements of fraud. I'm not sure I even saw an adequate pleading of falsity. Help me out. Yes, your honor. As far as the FMLA goes, the pleadings state that she was entitled to further leave under the FMLA and the statement was false. As far as the actual days that she was taken, because Spotify had failed to give her this FMLA notice, appellant doesn't actually know whether any of the time, the two weeks that she took leave right before she was terminated, was even counted as FMLA leave. As far as... But there was no explanation of any of that, right? There was not... It just said that it was false, but it didn't explain how or why, right? How is the court supposed to figure that out? Yes, your honor. The complaint simply says that the statement that she did not have any available time left under the FMLA... And you expected the district court to go through the hours and calculate it all out? I don't understand. No, your honor. I would argue as far as the FMLA goes, that putting aside knowing involuntary and fraud in a release, just a straight FMLA claim, the courts generally won't ask for exactly how many days... I'm not suggesting you didn't adequately plead an FMLA claim. On the issue of falsity, which has to be specific under Rule 9b, that's where this is problematic. Yes, your honor. The other issue that you raised in your briefs was about her mental condition. But again, I think you anticipated this and had some information in the pleadings about what you were claiming might be an issue, which was the concussion and the mental health treatment arising from that. But you also, in your complaint, cited a letter that she received from her doctor saying that in two weeks, she'd be able to return to full capacity at work with no issues, which is, in fact, I think what happened. She went back to work and then obviously she was terminated shortly thereafter. But why isn't that letter from the doctor something the district court could consider in trying to ensure that there was no issue with respect to that? Yes, your honor. As far as the mental capacity claims themselves, the appellant does not argue a lack of capacity at the appellate court level. As far as putting in allegations regarding her mental state, those go more to the totality of the circumstances in terms of knowing involuntary. So a case that might say 14 days is enough time to consider an agreement has to be looked at on a case-by-case basis. But she only took 11, right? She didn't even take the 14. She only took 11. So isn't that an indication that there wasn't a lack of time because of any mental issues? I suppose it's possible, your honor. It's also- But the problem is, what do you plead that shows us that that should not be the conclusion? Because it seems to be the logical conclusion. We would need pleadings to indicate to us that, in this case, you have a claim to the contrary. Yes. So what's pleading? Well, I would ask for, in this particular case, given that it was a dismissal partly on 9b, for the opportunity to amend to put in the specificity that the district court had asked for. You didn't ask the district court for that. I went back and looked at your brief in the district court. And as they pointed out, there were only two. There was no general request for Lee to amend. There was two specific issues. One related to this repudiation, alleged repudiation. That has nothing to do with this issue. That had to do with the ratification, right? So the only other request was to say that, put in an additional allegation that she didn't have the opportunity to change any provisions, which the district court assumed that she didn't have any opportunity to change any provisions. So there was no, we can add this on fraudulent inducement, or we could add that on some other factor, right? Yes, your honor. And that is correct insofar as our request went to ratification and repudiation. The appellees had argued in their brief facts that were not in the complaint or in the record regarding that she didn't send them on. She didn't try and repudiate or she didn't request FMLA leave or things like that. And the district court accepted those. I know, but on the Borman factors, the only request you made to amend was to specifically allege that she didn't have a chance to change any of the provisions of the release. That was right? That was your only request? Yes, your honor.  And the district court assumed that, right? Yes, your honor. So how is the district court supposed to know that there's other information? You know, you're asking us for relief to amend, but the district court, you know, is where that request should be made. That is correct, your honor. Regarding repudiation, which the district court did note on, that is an issue that plays on when my client learned of the fraud in terms of repudiating or rescinding that agreement, not on the total length of time between when she signed the agreement and the date of the lawsuit. And I believe that the district court looked at it as the time that she signed the agreement. I see I'm out of time. All right, thank you. You have one minute for rebuttal. Thank you, Mr. Schwartz. All right, we'll now hear from Mr. DeLarga. Okay. Good morning. May I please the court? My name is Michael DeLarga and I represent the appellee in this matter. As set forth in our brief, we submit that the district court properly found that the appellant entered into the agreement knowing involuntary because at least five of the Borman factors weigh heavily towards enforcing the agreement. And that appellant cannot plead a plausible claim for fraudulent inducement. And if she could, the agreement must still be enforced because she ratified it. There are three primary arguments that I'd like to address with the court today. First, appellant appears to argue that the trial court erred when it did not consider appellant's mental capacity as part of the Borman factors. We have searched this court's rulings in applying the Borman factors over the last three decades and did not find any cases in which this court considered mental capacity as part of the Borman analysis. Mental capacity is a separate defense to the validity of an agreement and is a condition preceding to getting to the Borman factors. You have to first determine whether the individual had the mental capacity to contract before you determine whether or not the contract was entered into knowingly involuntary. But why wouldn't, if one of the factors is to consider education and business experience, why wouldn't within that, even if you have the legal capacity to enter into the agreement, couldn't that, if you're balancing all these various factors, if she did have some severe mental health condition, couldn't the district court consider that in the Borman factors? In terms of how much time she had and things like that? Your Honor, they could. But basically saying that you don't have the mental health and tying that to the Borman factor of lack of education or lack of business experience, having a mental health issue doesn't wipe away your educational experience. It doesn't wipe away your business experience. The two don't go together. The lack of mental capacity is a separate defense, which as Mr. Schwartz said, he did bring that up before the district court. The district court applied the heightened standard that this court uses for mental incapacity and the district court held that she didn't meet her pleadings. She hasn't appealed that here. With regard to the other Borman factor, Your Honor, actually, I'd like to take a step back. With regard to your question about whether you can consider mental health in the Borman factors, you can. But the concern here is that somebody who has depression or generalized anxiety or attention deficit hyperactive disorder, if they allege that every single time when you're looking at whether or not somebody entered into a contract knowing a voluntary, you're going to be flooded with litigants in this court saying every time that they contracted that they were depressed or they had too much anxiety in order to understand what they were doing. That really doesn't connect with education or business experience, nor does it connect with the other Borman factor that Mr. Schwartz was looking at, which is whether or not she had a sufficient amount of time to consider the agreement. This court decided a case recently in 2021, which is Long versus Corning, 847 Federal Appendix 74. And in that case, like here, the individual, it was a motion to dismiss. That was granted by the district court, and it was affirmed by this court. In that case, like here, the appellant was given 14 days to consider and seven days to revote. The appellant also claimed that her mental health prevented her from considering the agreement during the time allotted. The trial court found that the 14 days to consider and the seven days to repudiate was a sufficient amount of time in applying the Borman factors. This court affirmed that decision, and we ask this court to come to the same conclusion here. The second argument we'd like to address is appellant's claim that the district court erred in finding that the appellant failed to plausibly assert a claim of fraudulent inducement. We submit that appellant's claim fails for two primary reasons. First, as the court noted, we submitted that this court should affirm the district court's decision because the alleged statement she claims that she relied on is not false. In paragraph 31 of the complaint, appellant alleges that after she was terminated, Spotify told her that, quote, she would not have been permitted to take any additional leave. This statement is not false on its face because she was already terminated at the time the statement was allegedly made. A terminated employee wouldn't be entitled to any time off or further time off under the FML way or any other statute. Do you think that's how an employee would have understood it? I hadn't understood that to be your argument, but if your view is the reason she was told that she couldn't take it, she wouldn't have had any more time available to her, was because she had been terminated. I would think then the employee might very well not sign the settlement and fight about that. I thought your position was that she actually did not have any more leave time. Is that not your position? Our position is that it's not clear from the pleadings as to what the context of the conversation was. Let me suggest this to you. Why isn't the plaintiff able to plead on information and believe that she had more time available and that was a false statement and get discovery on your calculations as to how much time she had used and how much time she was entitled to? Your Honor, even if she pled upon information and belief, the statement as drafted and put into the complaint specifically says that she was told that she wasn't permitted to take any additional leave. That is a statement of expression or opinion about a hypothetical future leave request on the appellant never made. She doesn't plead that she ever made it before she was terminated. You're saying that it couldn't be a false statement because it was a statement of opinion? This is the employer telling her what the employer was prepared to afford her. I'm not sure that's a statement of opinion. What am I missing? Your Honor, whether or not an individual would be entitled to permitted leave in the future would depend on what the circumstances are around what the leave request would be. Isn't this statement no way, no how, not a statement of well, depending on the circumstances, you won't be able to take more leave? I have interpreted it as the former. I respectfully request that that is not a no way, no how. It's that you're not permitted to take additional leave. Without any context, one would not know exactly what that means. But the bottom line is she had already been terminated at the time that the statement was made. I understood it the way Judge Radji has articulated it, that she was basically saying she had been terminated but to get her to sign the release, she was suggesting, they were insinuating, don't worry that you've been terminated because you wouldn't be able to take any more leave anyway under any circumstance. You were out of leave, there wasn't going to be any leave for you, so you might as well sign this release and get some money out of this. That's what they're implying at least. And to that extent, if there is any ambiguity as to how the words get construed, we should construe them most favorably to the plaintiff at this point, no? Yes, Your Honor. That is true. So where does that leave you? Well, Your Honor, it also leaves me to the point that she couldn't have justifiably relied on that statement that was made to her. First, as I noted, well, let me take a step back. In paragraph 16 of the agreement, appellant acknowledged and agreed that she did not rely on any previous statements by Spotify in signing the agreement. Specifically, the agreement that she signed states, quote, no representations were made to induce execution of this letter agreement that are not expressly contained herein. If she signed the agreement knowing involuntary, which we submit that she did and the district court found, this language forecloses her from plausibly showing that she justifiably relied on an oral representation that is not in the agreement. So your position is no matter what they told her, even if it was false, she has no claim? Correct, because she didn't justifiably rely on it. It's not a sympathetic position for your client, you do understand. I understand that, Your Honor. We've never said in the context of an employee signing a release that an integration clause like that. We've enforced those integration clause when it's two companies in a contract together, but this is obviously a different context where you have an employee, unrepresented by an attorney, signing a release, right? Do you have any case where we've said that an integration clause would foreclose? It's another issue whether it's been properly pled here or not, but if it was properly pled, you think this court would rely on an integration clause to say no discovery on that issue? We don't have any Second Circuit cases, but we did cite a case in our brief that is a Southern District of New York case. That's right on point. Helen, Eddie. Let me just ask you, the minute you have left, why isn't there a more general concern that when you have a multi-factor test like Borman, that there should be some discovery before there's a decision on that? Can you address that? I know there are some, you cited one of them. And there are some reorders where we have affirmed district courts, but is there any concern about that in this case? No, your honor, there's no concern because there's enough that they pled in the complaint and also in the agreement itself for this court to make a determination based on the Borman factors applying those facts that she entered into the agreement knowingly and voluntarily. The fact that it was anticipated and there were facts pled about it? Yes, your honor. Am I right that how much time she would have had is a matter of calculation under the FMLA? For how much time she would have to consider the agreement? No, no, how much time, I'm sorry, how much time she would have been still able to take? Yes, so it depends on exactly how many days she had taken that was deemed to be job protected under the FMLA, how much time she would have remaining, and exactly whether she's in the one year period. Why would the plaintiff know that, because I suggested to Mr. Schwartz that his failure to plead that is a failure to plead falsity. So tell me how a plaintiff would have been expected to be able to plead those facts. Well, a plaintiff is typically notified when they take leave as to whether or not the leave is job protected under the FMLA. And if I understood Mr. Schwartz, the statement was that she hadn't been told that about the two weeks prior to termination, is that right? That's what they plead in the complaint, yes, your honor. And so why doesn't that get them to a plausible pleading? Well, it doesn't get them to it on a fraudulent inducement claim? Yes. Because once again, our position is it doesn't get them to a pleading under fraud for a number of reasons. One, we still believe that the statement was not false, as stated. Number two, it's not a material misrepresentation. Number three, an individual in her position should not be- Those are your defenses. I'm asking how, can we conclude that plaintiff should have known enough to plead that it was a fraudulent statement because it was false? Because here's the number of days she was entitled to, and here's the number of days she used. Was the plaintiff in a position to plead those facts? I don't know, your honor. How are we supposed to know? Well, I don't think that that's material, your honor. She's arguing that she was told something after she was terminated about she wasn't permitted to take any additional leave. Okay, okay, thank you. Thank you. Okay, Mr. Schwartz, you have one minute in rebuttal. May it please the court. Just to touch very briefly on the Borman factor. After discovery, it may very well turn out that 14 days was enough for her to review the agreement and sign it. But without discovery, we don't know that, and there's no per se rule regarding how much time is necessary. And regarding the Borman factors, the court- She only took 11, she only took 11, why is that an indication that the 14 was enough? Some people get nervous about waiting until the last day, so maybe she had a doctor's appointment, but it's the other- Again, nothing like that is pleaded. I suggested that to you before, that if you pleaded, I signed it on the 11th day because, and that would have shown that it didn't foreclose her saying that mentally it wasn't enough time. There's no pleading on that. That's correct, and I believe that- So I'm troubled as to how we let this survive, the dismissal motion. I'm out of time, would you like me to answer that briefly? Maybe you can answer it, yes. As far as the pleading, I would ask the court to, the appellant would ask the court to take inferences there as to the fact that she had that concussion, the fact that she had gotten back from leave just a couple of days before, the fact that she was discouraged from seeking counsel, which is another Borman factor. And looking at them in the totality of the circumstances, even if appellant loses on the amount of time given, that is not fatal to her claims or a lot of other factors. And I would say that the wrongful information on the FMLA is discouraging her from seeking counsel. All right, thank you Mr. Schwartz. Thank you, your honors. Thank you Mr. Arco, observed decision. Have a good day. Thank you. Okay, the next case on the calendar is United States versus Ryan. All right, we have Mr. McLaughlin for the appellant. Begin whenever you're ready, Mr. McLaughlin. I see you reserved two minutes for rebuttal. Thank you, good morning, your honors. Devin McLaughlin on behalf of defendant appellant Asia Ryan. I'd like to address the procedural unreasonableness arguments related to her sentence. As the court sees from the briefing, the principal procedural error argument is that the court relied on a mistaken view of facts and going ahead and imposing upward variance on Ms. Ryan. Specifically, she understood that Ms. Ryan was the driver on the August 27th driving incident. And as the government admits in its briefing, and I'm sure will admit today, there's no evidence at sentencing that went ahead and supported the notion that she was the driver on August 27th. And the August 27th incident of driving was the one where the employee encountered the car doing the getaway after the robbery and the employee unfortunately was dragged and hurt and injured in that incident. The reason we know that this is at the heart of the court's variance decision is as follows. If you look at the sentencing transcript on pages A111 and A112, Judge Bryant went ahead and indicated, obviously a person who drags another person with a car, or who puts a car in gear when someone is standing in front of it, is a person from whom the public needs to be protected. So that tells us that she's indicating an understanding that Ms. Ryan was the person who drove the vehicle dragging the car. That was at the very end of the sentencing on the issue of overall dangerousness. Should we look at the fact that there was a lot of details earlier in the proceeding about which incidents your client was the driver on? And there were three that were being considered, and the prosecutor went through in great detail which ones your client, the two that your client was the driver on. And the third one that you're referencing where she was just in the car. And the district court made particular findings upon that. So why should we consider that as well? It wasn't like that was the only reference. I absolutely agree, Your Honor. Why can't we look at what happened earlier? So it tends to make sense logically that the finding that's most closely related to the announcement of the variance, or the one that's actually stated as part of the variance, is the one that one should focus on. So if we go to the next page of the transcript, A112, where she's imposing the variance, she ends up doing what the court tells her to do, which is specify the basis for the variance. And she says, the fact that the defendant recklessly disregarded the well-being of others and, in fact, injured another person in the commission of defense, the court feels an upward departure is appropriate. The injured person incident on the facts presented to the court was the August 27th incident, and we know that. Yeah, one of the August 28th ones, the driver. The mirror hit the driver. The mirror hit the driver, and the victim testified at the hearing about that. I was in front of the car, and she looked at me, and I looked at her, and I just got out of the way in time, so. Correct, correct, Your Honor. But again, there was a lot of detail, and that was an injury, right? Well, the reality is there's no facts that there was an injury. I know, but she could have been referencing that very easily. Two of the victims testified at sentencing. One was on the August 27th robbery, the husband, wife.